1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

**ALVERSON TAYLOR & SANDERS**
KURT R. BONDS, ESQ.
Nevada Bar No. 6228
DAVID M. SEXTON, ESQ.
Nevada Bar No. 14951
6605 Grand Montecito Parkway
Suite 200
Las Vegas, Nevada 89149
(702) 384-7000
efile@alversontaylor.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| EMILY SEARS, NAJOME COLON a/k/a GIA MACOOL, RACHEL BERNSTEIN a/k/a RACHEL KOREN, LUCY PINDER, and MARIANA DAVALOS | Case No. _____ |
| Plaintiffs, vs. | **COMPLAINT** |
| RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB | **(Jury Trial Demanded)** |
| Defendants. | |

COME NOW Plaintiffs EMILY SEARS, NAJOME COLON a/k/a GIA MACOOL, RACHEL BERNSTEIN a/k/a RACHEL KOREN, LUCY PINDER, and MARIANA DAVALOS (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for Complaint against Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S

KB/86

CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB ("Defendants" or "Crazy Horse") respectfully allege as follows:

## BACKGROUND

1.     The following is an action for damages and injunctive relief relating to Defendants' misappropriation and unauthorized publication of the image and likeness of Plaintiff Models, who are professional models, in order to promote their strip club, Crazy Horse III Gentlemen's Club ("Crazy Horse" or, the "Defendant").

2.     As detailed below, Defendants' unauthorized use of Plaintiff Models' images, photos, and likenesses (collectively, "Image") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a person's image for purposes of advertising; and b) violation of Nevada's Right of Publicity statute, NRS 597.810, which protects a person's right to privacy and publicity.

3.     Defendants have pirated the images, likeness, and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote, and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

4.     Defendants are unapologetic, chronic, and habitual infringers.

5.     Defendants never sought consent or authority to use any of the Plaintiffs' images for any purpose.

6.     No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness, and/or identity.

7.     Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use of any image, each Plaintiff would have promptly and unequivocally declined.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

8.      Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants; has contracted to perform at and/or participate in events at Crazy Horse; has been hired to promote, advertise, market or endorse their events and other activities offered at Crazy Horse; and/or that each Plaintiff depicted in the promotional materials and social media and/or Internet posts has attended or will attend each event and has participated in or intends to participate in the activities advertised.

9.      Defendants' conduct is also injurious to each Plaintiff Model.

10.     Defendants circumvented the typical arms-length negotiation process entirely and intentionally pirated the images. In doing so, Defendants have utterly deprived each Plaintiff the right and ability to say "no."

11.     Defendants have prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand, and reputation.

12.     In the end, Defendants gained an economic windfall by using the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit Crazy Horse, without having to compensate the models for such usage.  Plaintiffs, however, sustained injury to their images, brands, and marketability by shear affiliation with Crazy Horse, a strip club operated by Defendants.

13.     Having operated a business in the strip club industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

14.     Much more than merely a misuse in connection with an innocuous brand or event, Defendants embarrassed Plaintiffs by associating their images with Crazy Horse.

15.     In addition to the actual, punitive, and exemplary damages set forth below, Plaintiff Models likewise seek an Order from this Court permanently enjoining Defendants from using the images, likeness, and/or identity of each Plaintiff Model to promote Crazy Horse, via any medium.

## **JURISDICTION AND VENUE**

16.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)–(B).  This Court has supplemental jurisdiction over the Nevada state law claims alleged herein pursuant to 28 U.S.C. § 1367.

17.     The Court has personal jurisdiction over Defendants based on their contact with the State of Nevada, including but not limited to Defendants' registration to conduct business in Nevada, their physical location and principal place of business in Nevada, and upon information and belief, Defendants committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Nevada.

18.     According to publicly available records, and upon information and belief, Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB and RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB are, and at all times relevant to this action were, Limited Liability Companies organized and existing pursuant to the laws of the State of Nevada doing business as a strip club under the name "Crazy Horse III Gentlemen's Club" in Las Vegas, Nevada. Defendant, SN

KB/86

INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB, is, and at all times relevant to this action was, a Limited Liability Company organized and existing pursuant to the laws of the State of Delaware and registered with the State of Nevada that is doing business in Las Vegas, Nevada as a strip club under the name "Crazy Horse III Gentlemen's Club."

19.    Venue is proper in the United States District Court for the District of Nevada because Clark County is the principal place of business for Defendants. Venue is also proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in Clark County in the District of Nevada.

20.    All parties have minimum contacts with Clark County, a significant portion of the alleged causes of action arose and accrued in Clark County, Nevada, and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Clark County.

**PARTIES**

A.    **Plaintiffs**

21.    Given the multitude of violations harming the Plaintiff models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations presently known into this single collective action (with distinct claims per each model) on behalf of the following models.

22.    Plaintiff EMILY SEARS ("Sears") is, and at all times relevant to this action was, a well-known professional model and a resident of Los Angeles County, California.

23.    Plaintiff NAJOME COLON a/k/a GIA MACOOL ("Macool") is, and at all times relevant to this action was, a well-known professional model and a resident of Orange County, Florida.

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

24.     Plaintiff RACHEL BERNSTEIN a/k/a RACHEL KOREN ("Koren") is, and at all times relevant to this action was, a well-known professional model and a resident of Los Angeles, California.

25.     Plaintiff LUCY PINDER ("Pinder") is, and at all times relevant to this action was, a well-known professional model and a resident of the United Kingdom.

26.     Plaintiff MARIANA DAVALOS ("Davalos") is, and at all times relevant to this action was, a well-known professional model and a resident of Los Angeles, California.

**B.     Defendant**

27.     According to publicly available records, and upon information and belief, Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB and RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB are Limited Liability Companies organized under the laws of the State of Nevada, and own and operate a strip club under the name Crazy Horse III Gentlemen's Club located at 3525 West Russell Road, Las Vegas, Nevada 89118. Defendant, SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB, is a Limited Liability Company organized under the laws of the State of Delaware that is registered to do business in Nevada and owns and operates a strip club under the name Crazy Horse III Gentlemen's Club located at 3525 West Russell Road, Las Vegas, Nevada 89118.

28.     Crazy Horse holds, and at all times relevant has held, itself out as an operator of a strip club that engages in the business of entertaining its patrons with alcohol, fully nude and/or semi-nude dancing, and private dancing.

29.     Crazy Horse owns and/or operates www.crazyhorse3.com, as well as other social media accounts and websites, such as https://www.facebook.com/CrazyHorse3LV/, Instagram with a user name "@crazyhorse3lv", and Twitter with username "@CRAZYHORSE3LV"

KB/86

through which they advertise their business, events, and parties.  For many of these events, images of one or more of the models were used to market and promote the events.

30.     Upon information and belief, Crazy Horse coordinated their promotional, Internet, and social media activities through active and dynamic use of their Facebook and other social media accounts and website.

## FACTUAL ALLEGATIONS

**A.     Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

31.     As set forth immediately below, Plaintiff Models were extremely well-known professional models who earned a livelihood modeling and selling images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

32.     Plaintiff Models' careers in the modeling industry placed a high degree of value on good will and reputation, which was critical in order to maximize earning potential, book modeling contracts, and establish individual brands.   In furtherance of establishing, and maintaining their brands, Plaintiff Models were necessarily selective concerning the companies, and brands, for which they chose to model.

33.     Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

34.     Plaintiff Models are professional models who earn a living by promoting their image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on reputation and brand for modeling, acting, hosting, and other opportunities.

35.     Plaintiff Models careers in the modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

establishing an individual brand, being selected for modeling contracts, and maximizing earnings.

36.     Each Plaintiff Model has worked to establish herself as reliable, reputable, and professional.

37.     Each Plaintiff Model must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.  In furtherance of establishing, and maintaining her brands, each Plaintiff Model was necessarily selective concerning the companies and brands for which she chose to model.

38.     Any improper or unauthorized use of an image, likeness, or identity could substantially injure the career and career opportunities of each Plaintiff Model.

39.     In the modeling industry, models such as the Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.  Each Plaintiff Model is a responsible professional in the ordinary course.  Each Plaintiff Model seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

40.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, requiring the model to:

a.      determine whether the individual or entity seeking a license and release of a model's image, likeness, or identity is reputable, has reputable products or services, and, through affiliation, would enhance or harm a model's stature or reputation;

b.      use this reputational information in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel, and how her image is going to be used (among other variables);

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

c.    protect her reputation and livelihood by carefully and expressly defining the terms and conditions of use; and

d.    reduce and memorialize the negotiated deal into an integrated, written agreement which defines the parties' relationship.  Endorsing, promoting, advertising, or marketing the "wrong" product, service, or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.  Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

41.    For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a strip club – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.    Defendants have Misappropriated Each Plaintiff's Image, Likeness, and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

42.    Defendants operate a Las Vegas-based strip club under the name Crazy Horse III Gentlemen's Club where it engages in the business of selling alcohol and food in an atmosphere where nude and/or semi-nude women entertain the business' clientele.

43.    Crazy Horse does this for its own commercial and financial benefit.

44.    As set forth below, each Plaintiff Model's image, likeness, and/or identity has been misappropriated by or at the direction of Defendants.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated, or will appear and participate in activities or events at Crazy Horse,

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

9

KB/86

and/or has agreed and consented to advertise, promote, market, or endorse Crazy Horse or Crazy Horse events or activities.

45.     Plaintiff Models have personal and proprietary interest in their right to privacy and publicity arising out of their persona and likeness contained within their images. Plaintiff Models' interest is separate and apart from any copyright claim that may or may not exist to the photographs that encompass Plaintiff Models' images. Plaintiff Models' persona, in the form of their likeness, is not copyrightable and their rights of publicity are independent of any copyright. *See e.g. Downing v. Abercrombie Fitch*, 265 F. 3d 994, 1005 (9th Cir. 2001).

46.     To the extent any copyright (or some other "right" for that matter) may exist for photograph depicting Plaintiff Models' images, Plaintiff Models allege that Defendants have totally and completely destroyed any such copyright by morphing, editing, or otherwise altering the original photographs.

47.     The manner in which Defendants used Plaintiff Models' images suggests to the public that Plaintiff Models are promoting or otherwise endorsing Defendants' establishment with the goal of increasing Crazy Horse visibility, driving clientele to attend the advertised events, and to otherwise increase revenue and drive profits.

48.     Crazy Horse has used, advertised, created, printed, and distributed the images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that Plaintiff Models either worked at, or endorsed, Crazy Horse.

49.     Crazy Horse used Plaintiff Models' image, and created the false impression that they worked at or endorsed Crazy Horse in order to receive certain benefits, including but not limited to: monetary payments; increased promotional opportunities, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

50.     As Crazy Horse was at all times aware, at no point have Plaintiff Models ever been affiliated with or employed by Crazy Horse, and at no point have Plaintiff Models ever endorsed Crazy Horse.

51.     All of Crazy Horse's activities, including its misappropriation of Plaintiff Models' images, and publication of them, were done without the knowledge or consent of Plaintiff Models, and Crazy Horse did not compensate Plaintiff Models for its use of their images. As such, Plaintiff Models have never received any benefit for Crazy Horse's use of their images. Defendants used Plaintiff Models' images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiff Models of their right to determine the use their images.

52.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiff Models.

### Plaintiff Emily Sears

53.     Sears is, and at all times relevant to this action was, an Australian model, spokeswoman and social media phenom. As a social media influencer, she encourages conversation via the content she creates. Sears shares body positive images with millions of followers and supports others to have the confidence to seek out healthy relationships. Through her efforts, she's witnessed a ripple effect of kindness and self-acceptance in her interactions with others. Sears believes social media empowers women to represent themselves how they want, as opposed to what industries may demand. These avenues have proven that every body type is beautiful. As a curvy model, Emily has been able to redirect her career with the power of social. People now control what is popular in the world, and she's humbled to have the opportunity to influence others to direct their own paths. Sears has appeared in titles such as: *GQ USA*, *FHM*, *MAXIM*, *Kandy Magazine*, *Ralph*, *M*, *Transworld*, *Motocross*, *Esquire*, and *ZOO Weekly*. Sears

KB/86

represented world-wide brands such as, Ciroc, Naven, Strike force MMA, Kumo Tires, Comfort Revolution, Two In The Shirt, Monster Energy, and Maneater Swimwear. Emily has also appeared in a variety of TVC and music video roles including national campaigns and internationally renowned music artists worldwide. Sears has her own commercial website http://www.emilysears.com/index.php. Sears has a combined tally of over 5 million Social Media Followers.[1]

54.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Sears negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

55.     Sears' image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit A** to the Complaint, which was posted on social media on at least one occasion (and has remained publically posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Sears has consented or agreed to promote, advertise, market, and/or endorse Crazy Horse. Specifically, on or about July 5, 2017 Sears' image (posed left in black lingerie, eating pizza) was uploaded to Instagram with intent to promote and market Crazy Horse's strip club. The caption on the image of Sears reads, "Watch the fight with us! Beer bucket specials and free pizza [pizza emoji] Yumm pizza! Hope to see your faces! #ch3 #ch3dolls #crazyhorse3lv #crazyhorse3 #sexywomen #ufcviewing #ufc #pizza." The use of the image falsely implied that Sears represents Defendants' strip club and that she authorized Crazy Horse to use her image for promotional and marketing purposes. The image was used without the consent of Sears and was manipulated to intentionally give the impression that Sears is a spokesperson for Crazy Horse, working at Crazy Horse, and/or that she endorses Crazy Horse.

[1]  In today's world of modeling, the number of online "followers" or "likes" is a strong factor in determining the earning capacity of a model and in establishing the notoriety (fame) of a model.

KB/86

56.     Sears' image, likeness, and/or identity in **Exhibit A** is being used as advertising, and on social media.

57.     Defendants' unauthorized use of Sears' image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Instagram account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Sears' image and likeness, it did so unlawfully, without authorization, and consent, and Sears suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

58.     Sears has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event.

59.     Defendants never sought permission or authority to use Sears' image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

60.     Sears never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

61.     Defendants neither offered nor paid any remuneration to Sears for the unauthorized use of her image, likeness, or identity.

62.     Defendants' use of Sears' image, likeness, and/or identity in connection with Crazy Horse impugns Sears' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

63. Defendants' improper use of Sears' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Sears' image in their market activities and business. In doing so, Defendants have further damaged Sears.

### Plaintiff Najome Colon a/k/a Gia Macool

64. Macool is, and at all times relevant to this action was, a a glamour and swimwear model, spokeswomen, and entrepreneur. Colon has modeled for *American Curves Magazine, ProRider*, and was the BikiniTeam.com model of the month for March 2018. She also appeared as *Playboy's* Playmate of the Month in their November 2014 issues. Colon is also an active spokesperson and host, serving as the spokesmodel for the CoolFitTV YouTube channel, and is a designer and entrepreneur, selling her swimwear lines, as well as other products, at www.giamacool.com. Colon has 1,700,000 followers on Instagram, over 5,500,000 followers on Facebook, and over 83,100 followers on Twitter.

65. In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Macool negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

66. Macool's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which was posted on social media on at least one occasion (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Macool has consented or agreed to promote, advertise, market, and/or endorse Crazy Horse. Specifically, on or about July 9, 2016, Macool's image (from the shoulders down wearing a white/transparent shirt/dress) was uploaded to Crazy Horse's Instagram with intent to promote and market Defendants' strip club. The Image of Macool was uploaded with the following caption: "Saturday night @crazyhorse3lv #ch3girls." The use of the image falsely implied that Macool represents Defendants' strip club and that she

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

authorized Crazy Horse to use her image for promotional and marketing purposes. The image was used without the consent of Macool and was manipulated to intentionally give the impression that Macool is a spokesperson for Crazy Horse, working at Crazy Horse, and/or that she endorses Crazy Horse.

67.     Macool's image, likeness, and/or identity in **Exhibit B** is being used as advertising, and on social media.

68.     Defendants' unauthorized use of Macool's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook and/or Twitter accounts could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Macool's image and likeness, they did so unlawfully, without authorization, and consent, and Macool suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

69.     Macool has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event.

70.     Defendants never sought permission or authority to use Macool's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

71.     Macool never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

/ / /

KB/86

72.   Defendants neither offered nor paid any remuneration to Macool for the unauthorized use of her image, likeness, or identity.

73.   Defendants' use of Macool's image, likeness, and/or identity in connection with Crazy Horse impugns Macool's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

74.   Defendants' improper use of Macool's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Macool's image in their market activities and business. In doing so, Defendants have further damaged Macool.

### *Plaintiff Rachel Bernstein a/k/a Rachel Koren*

75.   Koren is, and at all times relevant to this action was, an international model. She has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show "Bikini Destinations" all over the world, shot for major campaigns in Los Angeles, CA, and is the face of many brands. Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie "Date Night" with Steve Carell and Tina Fey. She also played the character of "Sue Emery" in an episode of "The Closer" where she can be seen doing her own stunts. She has also been published in major campaigns and worked for companies including Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, *Modern Salon Magazine*, No Fear, Axe Body Spray, Paul Mitchell, *Vibra Magazine*, *Launch Pad Magazine*, *Cut & Dry Magazine*, *Hairdo Magazine*, Sunset Tan, Divine Boutique, *Esquire Magazine*, *Vogue Magazine*, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, *Rebel X Magazine*, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, *Maxim*, *Viva Glam Magazine*, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, *Swim Magazine*, American Honey, and Have

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

Faith Swimwear. She currently owns her own company, Cashmere Hair Extensions, which appeared on the show "Shark Tank" in 2013.

76.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Koren negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

77.     Koren's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which was posted on social media on at least one occasion (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Koren has consented or agreed to promote, advertise, market, and/or endorse Crazy Horse. Specifically, on or about November 29, 2016, Koren's image (posed in sexy "Santa" lingerie) was uploaded to Crazy Horse's Facebook and/or Instagram with intent to promote and market Defendants' strip club. The Image of Koren was uploaded with a caption reading, "Help us put a smile on a child's face this season and we'll put one on yours. [smiley face emoji] Drop off your @98.5kluc unwrapped toy donation to us from Dec. 1 through Dec. 10 and receive a #free drink! #toydrive #feelthetingle." This Image of Koren was posted to Crazy Horse's Facebook page again on or about November 30, 2016 with no caption but part of an advertisement for Crazy Horse's toy drive promotion. The use of the image falsely implied that Koren represents Defendants' strip club and that she authorized Crazy Horse to use her image for promotional and marketing purposes. The image was used without the consent of Koren and was manipulated to intentionally give the impression that Koren is a spokesperson for Crazy Horse, working at Crazy Horse, and/or that she endorses Crazy Horse.

78.     Koren's image, likeness, and/or identity in **Exhibit C** is being used as advertising, and on social media.

/ / /

KB/86

79.   Defendants' unauthorized use of Koren's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Koren's image and likeness, they did so unlawfully, without authorization, and consent, and Koren suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

80.   Koren has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event.

81.   Defendants never sought permission or authority to use Koren's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

82.   Koren never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

83.   Defendants neither offered nor paid any remuneration to Koren for the unauthorized use of her image, likeness, or identity.

84.   Defendants' use of Koren's image, likeness, and/or identity in connection with Crazy Horse impugns Koren's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

85.   Defendants' improper use of Koren's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Koren's image in their market activities and business. In doing so, Defendants have further damaged Koren.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

18

KB/86

*Plaintiff Lucy Pinder*

86.     Pinder is, and at all times relevant to this action, was an English model, actress, host, businesswoman and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded and the Daily Star,* and hundreds of others. Pinder has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006 and 2007. Pinder was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) and others, and on large national and international advertising campaigns. Pinder has an established and developing acting career with many TV appearances and Film credits. Pinder has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon*, and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder had starring roles in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for 'Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue". Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

87.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

88.     Pinder's image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which was posted on social media on at least one occasion (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Pinder has consented or agreed to promote, advertise, market, and/or endorse Crazy Horse. Specifically, on or about March 20, 2015, Pinder's image (posed in a pink top) was uploaded to Crazy Horse's Facebook page with intent to promote and market Defendants' strip club. The Image of Pinder was uploaded with a caption reading, "Who's ready for tonight at #CH3LV? #Friday #boobs #TGIF #Vegas #CH3girls #FridayFunday #VIP #sexy #LasVegas #gentlemensclub #party." The use of the image falsely implied that Pinder represents Defendants' strip club and that she authorized Crazy Horse to use her image for promotional and marketing purposes. The image was used without the consent of Pinder and was manipulated to intentionally give the impression that Pinder is a spokesperson for Crazy Horse, working at Crazy Horse, and/or that she endorses Crazy Horse.

89.     Pinder's image, likeness, and/or identity in **Exhibit D** is being used as advertising, and on social media.

90.     Defendants' unauthorized use of Pinder's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Pinder's image and likeness, they did so unlawfully, without authorization, and consent, and Pinder suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

///

///

KB/86

91.     Pinder has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event.

92.     Defendants never sought permission or authority to use Pinder's image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

93.     Pinder never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

94.     Defendants neither offered nor paid any remuneration to Pinder for the unauthorized use of her image, likeness, or identity.

95.     Defendants' use of Pinder's image, likeness, and/or identity in connection with Crazy Horse impugns Pinder's character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

96.     Defendants' improper use of Pinder's image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pinder's image in their market activities and business. In doing so, Defendants have further damaged Pinder.

### *Plaintiff Mariana Davalos*

97.     Davalos is, and at all times relevant to this action was, an international model. Davalos has a twin sister, Camila, and together they started a modeling career at age 10. By the time Davalos was 18, her career was already established in Colombia as one of the most famous and successful models in all of Latin America. Davalos was the face of Nacar cosmetics and has appeared in *Maxim* magazine, *Imagen* magazine, *Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela*

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

*mas Dulce, Para Hombre, Spiritual Jeans*, and *Satori*. Davalos is constantly listed in "The top sexiest people in the World" lists and, whether solo or teamed up with her twin sister, is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with more than 491,000 Instagram followers and over 62,000 Twitter followers.

98.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Davalos negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

99.     Davalos' image, likeness, and/or identity are depicted in at least one photograph, enclosed as **Exhibit E** to the Complaint, which was posted on social media on at least one occasion (and has remained publicly posted since those initial posting, constituting a continuous and ongoing harm) to create the false perception that Davalos has consented or agreed to promote, advertise, market, and/or endorse Crazy Horse. Specifically, on or about November 2, 2015, Davalos' image (posed in a sexy referee costume) was uploaded to Crazy Horse's Instagram and/or Twitter with intent to promote and market Defendants' strip club. The Image of Davalos was uploaded with a caption reading, "Are you ready for some Monday Night Football action? Catch the Colts vs Panthers game with all your favorite ladies [football, smiley face, and trophy emojis] #MNF #football #vegas #game #ch3 #sports #viewingparty." The use of the image falsely implied that Davalos represents Defendants' strip club and that she authorized Crazy Horse to use her image for promotional and marketing purposes. The image was used without the consent of Davalos and was manipulated to intentionally give the impression that Davalos is a spokesperson for Crazy Horse, working at Crazy Horse, and/or that she endorses Crazy Horse.

/ / /

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

100.    Davalos' image, likeness, and/or identity in **Exhibit E** is being used as advertising, and on social media.

101.    Defendants' unauthorized use of Davalos' image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.  During the entire timeframe that Defendants used Davalos' image and likeness, they did so unlawfully, without authorization, and consent, and Davalos suffered a continued or repeated injury as a result of Defendants' unlawful conduct.

102.    Davalos has never been hired by Defendants or contracted with Defendants to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event.

103.    Defendants never sought permission or authority to use Davalos' image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

104.    Davalos never gave permission, assigned, licensed, or otherwise consented to Defendants using her image, likeness, or identity to advertise, promote, market, or endorse Defendants' businesses, Crazy Horse, or any Crazy Horse event.

105.    Defendants neither offered nor paid any remuneration to Davalos for the unauthorized use of her image, likeness, or identity.

106.    Defendants' use of Davalos' image, likeness, and/or identity in connection with Crazy Horse impugns Davalos' character, embarrasses her, and suggests – falsely – her support and endorsement of Defendants' establishment.

/ / /

KB/86

107.    Defendants' improper use of Davalos' image permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Davalos' image in their market activities and business. In doing so, Defendants have further damaged Davalos.

## CAUSES OF ACTION

*Plaintiff Emily Sears' Causes of Action against*
*Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III*
*GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S*
*CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III*
*GENTLEMEN'S CLUB*

## SEARS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

108.    Sears re-alleges paragraphs 1 – 21, 22, 27 - 52, and 53 – 63 above, and incorporates the same by reference as though fully set forth herein.

109.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Sears from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities…." 15 U.S.C. § 1125(a)(1)(B).

110.    Defendants used Sears' image, likeness and/or identity as described herein without authority in order to create the perception that Sears worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities.

111.    Defendants' use of Sears' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities as described in this Complaint was false and misleading.

/ / /

KB/86

112.   Defendants' unauthorized use of Sears' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Sears worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities and/or that Sears would participate in or appear at the specific events promoted in the advertisements.

113.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Crazy Horse, as to the general quality of attendees and participants of Crazy Horse and in their events, as well as specifically whether Sears worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities.

114.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Sears worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse or Crazy Horse events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Crazy Horse, visit Crazy Horse, and participate in events at Crazy Horse and had a material effect and impact on the decision of members and prospective members and participants to join Crazy Horse, visit Crazy Horse, and take part in the events at Crazy Horse.

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

115.    Defendants' advertisements, promotions and marketing of Crazy Horse and events at Crazy Horse occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Crazy Horse events.

116.    Defendants' unauthorized use of Sears' image, likeness, and/or identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting Crazy Horse and their activities and attracting clientele to Crazy Horse.

117.    Defendants knew or should have known that their unauthorized use of Sears' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

118.    Defendants' unauthorized use of Sears' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

119.    Defendants' wrongful conduct as described herein was willful.

120.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

121.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Sears of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Sears.

122.    The method and manner in which Defendants used the image of Sears further evinces that Defendants was aware of, or consciously disregarded, the fact that Sears did not consent to Defendants' use of the image to advertise Defendants' businesses.

123.    Defendants had caused irreparable harm to Sears, her reputation, and brand by attributing to Sears the strip club lifestyle and activities at Crazy Horse.

124.    Defendants' unauthorized use of Sears' image, likeness, and/or identity directly and proximately caused and continue to cause damage to Sears in an amount to be determined at trial.

**WHEREFORE**, Sears respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SEARS COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

125.    Sears re-alleges paragraphs 1 – 21, 22, 27 - 52, and 53 – 63 above, and incorporates the same by reference as though fully set forth herein.

126.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Sears from the conduct described herein.

127.    Defendants used Sears' image in order to create the false impression with the public that Sears either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Crazy Horse, and thereby generate revenue for Defendants.

128.    Thus, this was done in furtherance of Defendants' commercial benefit.

129.    Sears is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Sears' images in magazines and online. By virtue of Sears' use of her image and identity to build her brand, she has acquired a distinctiveness through secondary meaning. Sears' image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

130.    Both Sears and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

131.    As such, an unauthorized use of Sears' image to promote a strip club created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Sears. There is no doubt that Defendants' used Sears' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Sears' image and likeness was an existing intent to commercialize an interest in Sears' image and likeness.

132.    Defendants' use of Sears' image, likeness, and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Sears' fans and present and prospective clients into believing that Crazy Horse advertisements are endorsed by Sears, or sponsored, approved by, or associated with Sears.

133.    Despite the fact that Defendants was at all times aware that Sears neither worked at, nor endorsed their strip club, nevertheless, they used Sears' image in order to mislead potential customers as to Sears' employment at and/or affiliation with Crazy Horse.

134.    Defendants knew that their use of Sears' image would cause consumer confusion as to Sears' sponsorship and/or employment at Crazy Horse.

135.    Upon information and belief, Defendants' use of Sears' image did in fact cause consumer confusion as to Sears' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

136.    As a direct and proximate result of Defendants' actions, Sears has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Sears' image, likeness, and/or identity, or how Sears' image, likeness, and/or identity is being depicted by Defendants.

137.    Further, any failure, neglect, or default by Defendants will reflect adversely on Sears as the believed source of origin, sponsorship, approval, or association thereof, hampering efforts by Sears to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Sears.

138.    Due to Defendants' unauthorized use of Sears' image, Sears has been damaged in an amount to be determined at trial.

**WHEREFORE**, Sears respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SEARS COUNT III
**(Violation of Nevada's Right of Publicity Statute – NRS 597.810)**

139.    Sears re-alleges paragraphs 1 – 21, 22, 27 - 52, and 53 – 63 above, and incorporates the same by reference as though fully set forth herein.

140.    Sears has a right of publicity under Nevada's Right of Publicity statute—NRS 597.810.

141.    Defendants may not use the name, voice, signature, photograph or likeness of Sears for any commercial use without first having obtained her written consent for that use.

KB/86

142.    As set forth herein, Defendants have violated Sears' right to publicity by invading Sears' privacy, misappropriating her likeness, and publishing on Defendants' social media outlets, the altered image, likeness, and/or identity of Sears, as it appears in **Exhibit A**, which made it appear as though Sears was employed at Crazy Horse, or endorsed Defendants' strip club, or any Crazy Horse events or activities.

143.    Defendants' unauthorized use of Sears' image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants' used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

144.    Sears is informed and believes and herein alleges that Defendants posted and publicized her image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

145.    Sears is further informed and believes and herein alleges that discovery will prove that Defendants' republicized Sears' image and likeness on various occasions, via different mediums, after the initial date of the posting of her image and likeness (July 5, 2017) and through the filing of this complaint.

146.    Sears is informed and believes and herein alleges that Defendants' republication of Sears' image and likeness was altered so as to reach a new audience and/or promote a different product.

147.    Despite the clear language of NRS 597.810, and at all relevant times, Defendants published, printed, displayed, and/or publicly used Sears' image, likeness, and/or identity on

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Crazy Horse and/or San's events and activities.

148.   The respective social media outlets were designed to attract business and generate revenue for Crazy Horse.

149.   Upon information and belief, Defendants' use of Sears' image, likeness and/or identity did in fact attract clientele and generate business for Crazy Horse.

150.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Sears' image, likeness, and/or identity on the Crazy Horse social media outlets or for any other use or matter associated with Crazy Horse.

151.   Defendants took these actions without Sears' permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Sears' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activities or for any other use.

152.   Sears never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activity.

153.    Defendants was at all relevant times aware that they never received Sears' permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Crazy Horse.

154.   At no point did Defendants ever compensate Sears for their use of her image, likeness, and/or identity.

155.   No applicable privilege or authorization exists for Defendants' use of Sears' Image.

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

156.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Sears' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

157.    Defendants caused irreparable harm to Sears, her reputation, and brand by attributing to Sears the strip club lifestyle and activities at Crazy Horse.

158.    Defendants have also damaged Sears as a direct and proximate result of their unauthorized use of Sears' image, likeness and/or identity without compensating Sears.

159.    Due to Defendants' violation of Sears' rights of privacy and publicity under NRS 597.810, Sears has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

160.    In addition, Sears hereby requests an Order permanently enjoining Defendants from violating Sears' right to privacy and publicity.

161.    In addition, Sears hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants' knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Sears respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits, and other relief deemed just and proper by this Court.

## SEARS COUNT IV
### (Negligence and *Respondeat Superior*)

162.    Sears re-alleges paragraphs 1 – 21, 22, 27 - 52, and 53 – 63 above, and incorporates the same by reference as though fully set forth herein.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

163.    Sears is further informed and believes and herein alleges that Defendants maintain or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes.

164.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

165.    Defendants owed a duty of care to Sears to ensure that their advertising and promotional materials and practices did not infringe on her property and publicity rights.

166.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

167.    Defendants breached their duty of care to both Sears and consumers by failing to either adhere to, or implement, policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

168.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with federal and Nevada law, were not violated.  Defendants breached their duty of care to Sears and consumers by their negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

/ / /

KB/86

169.    Defendants' breach was the proximate cause of the harm Sears suffered when her Image was published without her consent, authorization and done so in a false, misleading, and/or deceptive manner.

170.    As a result of Defendants' negligence, Sears has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Najome Colon a/k/a Gia Macool's Causes of Action against Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB***

## MACOOL COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

171.    Macool re-alleges paragraphs 1 – 21, 23, 27 - 52, and 64 – 74 above, and incorporates the same by reference as though fully set forth herein.

172.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Macool from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

173.    Defendants used Macool's image, likeness and/or identity as described herein without authority in order to create the perception that Macool worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities.

/ / /

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

174. Defendants' use of Macool's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities as described in this Complaint was false and misleading.

175. Defendants' unauthorized use of Macool's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Macool worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities and/or that Macool would participate in or appear at the specific events promoted in the advertisements.

176. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Crazy Horse, as to the general quality of attendees and participants of Crazy Horse and in their events, as well as specifically whether Macool worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities.

177. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Macool worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Crazy Horse, visit Crazy Horse,

KB/86

and participate in events at Crazy Horse and had a material effect and impact on the decision of members and prospective members and participants to join Crazy Horse, visit Crazy Horse, and take part in the events at Crazy Horse.

178.  Defendants' advertisements, promotions and marketing of Crazy Horse and events at Crazy Horse occur in and are targeted to interstate commerce. Specifically, Defendants promotes their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Crazy Horse events.

179.  Defendants' unauthorized use of Macool's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Crazy Horse and their activities and attracting clientele to Crazy Horse.

180.  Defendants knew or should have known that their unauthorized use of Macool's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

181.  Defendants' unauthorized use of Macool's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

182.  Defendants' wrongful conduct as described herein was willful.

183.  As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

184.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Macool of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Macool.

///

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

185.   The method and manner in which Defendants used the image of Macool further evinces that Defendants was aware of or consciously disregarded the fact that Macool did not consent to Defendants' use of the image to advertise Defendants' businesses.

186.   Defendants had caused irreparable harm to Macool, her reputation, and brand by attributing to Macool the strip club lifestyle and activities at Crazy Horse.

187.   Defendants' unauthorized use of Macool's image, likeness, and/or identity directly and proximately caused and continue to cause damage to Macool in an amount to be determined at trial.

**WHEREFORE**, Macool respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## MACOOL COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

188.   Macool re-alleges paragraphs 1 – 21, 23, 27 - 52, and 64 – 74 above, and incorporates the same by reference as though fully set forth herein.

189.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Macool from the conduct described herein.

190.   Defendants used Macool's image in order to create the false impression with the public that Macool either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Crazy Horse, and thereby generate revenue for Defendants.

191.   Thus, this was done in furtherance of Defendants' commercial benefit.

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

192.    Macool is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Macool's images in magazines and online. By virtue of Macool's use of her image and identity to build her brand, she has acquired a distinctiveness through secondary meaning. Macool's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

193.    Both Macool and Defendants compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

194.    As such, an unauthorized use of Macool's image to promote a strip club created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Macool. There is no doubt that Defendants used Macool's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Macool's image and likeness was an existing intent to commercialize an interest in Macool's image and likeness

195.    Defendants' use of Macool's image, likeness, and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association, which has deceived Macool's fans, and present and prospective clients, into believing that Crazy Horse advertisements are endorsed by Macool, or sponsored, approved or associated with Macool.

/ / /

/ / /

KB/86

196.   Despite the fact that Defendants was at all times aware that Macool neither worked at, nor endorsed their strip club, nevertheless, they used Macool's image in order to mislead potential customers as to Macool's employment at and/or affiliation with Crazy Horse.

197.   Defendants knew that their use of Macool's image would cause consumer confusion as to Macool's sponsorship and/or employment at Crazy Horse.

198.   Upon information and belief, Defendants' use of Macool's image did in fact cause consumer confusion as to Macool's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

199.   As a direct and proximate result of Defendants' actions, Macool has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Macool's image, likeness, and/or identity, or how Macool's image, likeness, and/or identity is being depicted by Defendants.

200.   Further, any failure, neglect, or default by Defendants will reflect adversely on Macool as the believed source of origin, sponsorship, approval, or association thereof, hampering efforts by Macool to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Macool.

201.   Due to Defendants' unauthorized use of Macool's image, Macool has been damaged in an amount to be determined at trial.

**WHEREFORE**, Macool respectfully requests that the Court enter a judgment against Defendants' and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

39                                    KB/86

## MACOOL COUNT III
### (Violation of Nevada's Right of Publicity Statute – NRS 597.810)

202.    Macool re-alleges paragraphs 1 – 21, 23, 27 - 52, and 64 – 74 above, and incorporates the same by reference as though fully set forth herein.

203.    Macool has a right of publicity under Nevada's Right of Publicity statute—NRS 597.810.

204.    Defendants may not use the name, voice, signature, photograph or likeness of Macool for any commercial use without first having obtained her written consent for that use.

205.    As set forth herein, Defendants have violated Macool's right to publicity by invading Macool's privacy, misappropriating her likeness, and publishing on Defendants' social media outlets and/or website, the altered image, likeness, and/or identity of Macool, as it appears in **Exhibit B**, which made it appear as though Macool was employed at Crazy Horse, or endorsed Defendants' strip club, or any Crazy Horse events or activities.

206.    Defendants' unauthorized use of Macool's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

207.    Macool is informed and believes and herein alleges that Defendants posted and publicized her image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

208.    Macool is further informed and believes and herein alleges that discovery will prove that Defendants' republicized Macool's image and likeness on various occasions, via

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

40

different mediums, after the initial date of the posting of her image and likeness (July 9, 2016) and through the filing of this complaint.

209.   Macool is informed and believes and herein alleges that Defendants' republication of Macool's image and likeness was altered so as to reach a new audience and/or promote a different product.

210.   Despite the clear language of NRS 597.810, and at all relevant times, Defendants published, printed, displayed, and/or publicly used Macool's image, likeness, and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Crazy Horse and/or Crazy Horse events and activities.

211.   The respective social media outlets were designed to attract business and generate revenue for Crazy Horse.

212.   Upon information and belief, Defendants' use of Macool's image, likeness and/or identity did in fact attract clientele and generate business for Crazy Horse.

213.   At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Macool's image, likeness, and/or identity on Crazy Horse social media outlets or for any other use or matter associated with Crazy Horse.

214.   Defendants took these actions without Macool's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Macool's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activities or for any other use.

215.   Macool never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activity.

KB/86

216.     Defendants was at all relevant times aware that they never received Macool's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Crazy Horse.

217.     At no point did Defendants ever compensate Macool for their use of her image, likeness, and/or identity.

218.     No applicable privilege or authorization exists for Defendants' use of Macool's Image.

219.     Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Macool's image, likeness, and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

220.     Defendants caused irreparable harm to Macool, her reputation, and brand by attributing to Macool the strip club lifestyle and activities at Crazy Horse.

221.     Defendants have also damaged Macool as a direct and proximate result of their unauthorized use of Macool's image, likeness, and/or identity without compensating Macool.

222.     Due to Defendants' violation of Macool's rights of privacy and publicity under NRS 597.810, Macool has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

223.     In addition, Macool hereby requests an Order permanently enjoining Defendants from violating Macool's right to privacy and publicity.

224.     In addition, Macool hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants' knowing and intentional violation of her statutory rights to privacy and publicity.

KB/86

**ALVERSON TAYLOR & SANDERS**
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

**WHEREFORE**, Macool respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## MACOOL COUNT IV
### (Negligence and *Respondeat Superior*)

225.    Macool re-alleges paragraphs 1 – 21, 23, 27 - 52, and 64 – 74 above, and incorporates the same by reference as though fully set forth herein.

226.    Macool is further informed and believes and herein alleges that Defendants maintains or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

227.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

228.    Defendants owed a duty of care to Macool to ensure that their advertising and promotional materials and practices did not infringe on her property and publicity rights.

229.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

230.    Defendants breached their duty of care to both Macool and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

231.     Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with federal and Nevada law, were not violated.  Defendants breached their duty of care to Macool and consumers by their negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

232.     Defendants' breach was the proximate cause of the harm Macool suffered when her Image was published without her consent, authorization and done so in a false, misleading, and/or deceptive manner.

233.     As a result of Defendants' negligence, Macool has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Rachel Bernstein a/k/a Rachel Koren's Causes of Action against
Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III
GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S
CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III
GENTLEMEN'S CLUB***

### KOREN COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

234.     Koren re-alleges paragraphs 1 – 21, 24, 27 - 52, and 75 – 85 above, and incorporates the same by reference as though fully set forth herein.

235.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Koren from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

44                                                              KB/86

236.    Defendants used Koren's image, likeness and/or identity as described herein without authority in order to create the perception that Koren worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities.

237.    Defendants' use of Koren's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities as described in this Complaint was false and misleading.

238.    Defendants' unauthorized use of Koren's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Koren worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities and/or that Koren would participate in or appear at the specific events promoted in the advertisements.

239.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Crazy Horse, as to the general quality of attendees and participants of Crazy Horse and in their events, as well as specifically whether Koren worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities.

240.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Koren worked at or was

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Crazy Horse, visit Crazy Horse, and participate in events at Crazy Horse and had a material effect and impact on the decision of members and prospective members and participants to join Crazy Horse, visit Crazy Horse, and take part in the events at Crazy Horse.

241.   Defendants' advertisements, promotions and marketing of Crazy Horse and events at Crazy Horse occur in and are targeted to interstate commerce. Specifically, Defendants promotes their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Crazy Horse events.

242.   Defendants' unauthorized use of Koren's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Crazy Horse and their activities and attracting clientele to Crazy Horse.

243.   Defendants knew or should have known that their unauthorized use of Koren's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

244.   Defendants' unauthorized use of Koren's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

245.   Defendants' wrongful conduct as described herein was willful.

246.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

247.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Koren of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

248.    The method and manner in which Defendants used the image of Koren further evinces that Defendants was aware of or consciously disregarded the fact that Koren did not consent to Defendants' use of the image to advertise Defendants' businesses.

249.    Defendants had caused irreparable harm to Koren, her reputation, and brand by attributing to Koren the strip club lifestyle and activities at Crazy Horse.

250.    Defendants' unauthorized use of Koren's image, likeness, and/or identity directly and proximately caused and continue to cause damage to Koren in an amount to be determined at trial.

**WHEREFORE**, Koren respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## KOREN COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

251.    Koren re-alleges paragraphs 1 – 21, 24, 27 - 52, and 75 – 85 above, and incorporates the same by reference as though fully set forth herein.

252.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Koren from the conduct described herein

253.    Defendants used Koren's image in order to create the false impression with the public that Koren either worked at Defendants' strip club, or endorsed Defendants' businesses.

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

This was done to promote and attract clientele to Crazy Horse, and thereby generate revenue for Defendants.

254.     Thus, this was done in furtherance of Defendants' commercial benefit.

255.     Koren is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Koren's images in magazines and online. By virtue of Koren's use of her image and identity to build her brand, she has acquired a distinctiveness through secondary meaning. Koren's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

256.     Both Koren and Defendants compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

257.     As such, an unauthorized use of Koren's image to promote a strip club created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Koren. There is no doubt that Defendants' used Koren's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Koren's image and likeness was an existing intent to commercialize an interest in Koren's image and likeness

258.     Defendants' use of Koren's image, likeness, and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association, which has deceived

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

Koren's fans, and present and prospective clients, into believing that Crazy Horse advertisements are endorsed by Koren, or sponsored, approved or associated with Koren.

259.    Despite the fact that Defendants was at all times aware that Koren neither worked at, nor endorsed their strip club, nevertheless, they used Koren's image in order to mislead potential customers as to Koren's employment at and/or affiliation with Crazy Horse.

260.    Defendants knew that their use of Koren's image would cause consumer confusion as to Koren's sponsorship and/or employment at Crazy Horse.

261.    Upon information and belief, Defendants' use of Koren's image did in fact cause consumer confusion as to Koren's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

262.    As a direct and proximate result of Defendants' actions, Koren has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Koren's image, likeness, and/or identity, or how Koren's image, likeness, and/or identity is being depicted by Defendants.

263.    Further, any failure, neglect or default by Defendants will reflect adversely on Koren as the believed source of origin, sponsorship, approval, or association thereof, hampering efforts by Koren to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Koren.

264.    Due to Defendants' unauthorized use of Koren's image, Koren has been damaged in an amount to be determined at trial.

**WHEREFORE**, Koren respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use,

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

1  attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that

2  is just and proper.

3  **KOREN COUNT III**
4  (**Violation of Nevada's Right of Publicity Statute – NRS 597.810**)

5      265.    Koren re-alleges paragraphs 1 – 21, 24, 27 - 52, and 75 – 85 above, and

6  incorporates the same by reference as though fully set forth herein.

7      266.    Koren has a right of publicity under Nevada's Right of Publicity statute—NRS

8  597.810.

9      267.    Defendants may not use the name, voice, signature, photograph or likeness of

10  Koren for any commercial use without first having obtained her written consent for that use.

11

12      268.    As set forth herein, Defendants have violated Koren's right to publicity by

13  invading Koren's privacy, misappropriating her likeness, and publishing on Defendants' social

14  media outlets and/or website, the altered image, likeness, and/or identity of Koren, as it appears

15  in **Exhibit C**, which made it appear as though Koren was employed at Crazy Horse, or endorsed

16  Defendants' strip club, or any Crazy Horse events or activities.

17

18      269.    Defendants' unauthorized use of Koren's image and likeness was continuous and

19  ongoing in that it was never removed after it was initially posted by Defendants; further, the

20  manner in which Defendants used the subject image was ongoing and continuous in that any

21  person visiting Defendants' Facebook account could view, access, and even download the image

22  from the date it was first posted until present.

23      270.    Koren is informed and believes and herein alleges that Defendants posted and

24  publicized her image and likeness in a manner that was hidden, inherently undiscoverable, or

25  inherently unknowable, in that Defendants published her image and likeness on social media

26  threads that, over time, are (for example, but not limited to) "pushed" down in time from

27  immediate visibility.

28

271.    Koren is further informed and believes and herein alleges that discovery will prove that Defendants' republicized Koren's image and likeness on various occasions, via different mediums, after the initial date of the posting of her image and likeness (November 29, 2016) and through the filing of this complaint.

272.    Koren is informed and believes and herein alleges that Defendants' republication of Koren's image and likeness was altered so as to reach a new audience and/or promote a different product.

273.    Despite the clear language of NRS 597.810, and at all relevant times, Defendants published, printed, displayed, and/or publicly used Koren's image, likeness, and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Crazy Horse and/or Crazy Horse events and activities.

274.    The respective social media outlets and website were designed to attract business and generate revenue for Crazy Horse.

275.    Upon information and belief, Defendants' use of Koren's image, likeness and/or identity did in fact attract clientele and generate business for Crazy Horse.

276.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Koren's image, likeness, and/or identity on the Crazy Horse social media outlets or for any other use or matter associated with Crazy Horse.

277.    Defendants took these actions without Koren's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Koren's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activities or for any other use.

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

278.    Koren never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activity.

279.    Defendants was at all relevant times aware that they never received Koren's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Crazy Horse.

280.    At no point did Defendants ever compensate Koren for their use of her image, likeness, and/or identity.

281.    No applicable privilege or authorization exists for Defendants' use of Koren's Image.

282.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Koren's image, likeness, and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

283.    Defendants caused irreparable harm to Koren, her reputation, and brand by attributing to Koren the strip club lifestyle and activities at Crazy Horse.

284.    Defendants have also damaged Koren as a direct and proximate result of their unauthorized use of Koren's image, likeness, and/or identity without compensating Koren.

285.    Due to Defendants' violation of Koren's rights of privacy and publicity under NRS 597.810, Koren has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

286.    In addition, Koren hereby requests an Order permanently enjoining Defendants from violating Koren's right to privacy and publicity.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

287.    In addition, Koren hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants' knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Koren respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

### KOREN COUNT IV
**(Negligence and *Respondeat Superior*)**

288.    Koren re-alleges paragraphs 1 – 21, 24, 27 - 52, and 75 – 85 above, and incorporates the same by reference as though fully set forth herein.

289.    Koren is further informed and believes and herein alleges that Defendants maintain or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

290.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

291.    Defendants owed a duty of care to Koren to ensure that their advertising and promotional materials and practices did not infringe on her property and publicity rights.

292.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

293.    Defendants breached their duty of care to both Koren and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

294.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with federal and Nevada law, were not violated.  Defendants breached their duty of care to Koren and consumers by their negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

295.    Defendants' breach was the proximate cause of the harm Koren suffered when her Image was published without her consent, authorization and done so in a false, misleading, and/or deceptive manner.

296.    As a result of Defendants' negligence, Koren has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Lucy Pinder's Causes of Action against
Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III
GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S
CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III
GENTLEMEN'S CLUB***

**PINDER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

297.    Pinder re-alleges paragraphs 1 – 21, 25, 27 – 52, and 86 – 96 above, and incorporates the same by reference as though fully set forth herein.

298.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Pinder from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

299.   Defendants used Pinder's image, likeness and/or identity as described herein without authority in order to create the perception that Pinder worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities.

300.   Defendants' use of Pinder's image, likeness and/or identity to advertise, promote and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities as described in this Complaint was false and misleading.

301.   Defendants' unauthorized use of Pinder's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pinder worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities and/or that Pinder would participate in or appear at the specific events promoted in the advertisements.

302.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Crazy Horse, as to the general quality of attendees and participants of Crazy Horse and in their events, as well as specifically whether Pinder worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

303.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pinder worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Crazy Horse, visit Crazy Horse, and participate in events at Crazy Horse and had a material effect and impact on the decision of members and prospective members and participants to join Crazy Horse, visit Crazy Horse, and take part in the events at Crazy Horse.

304.    Defendants' advertisements, promotions and marketing of Crazy Horse and events at Crazy Horse occur in and are targeted to interstate commerce. Specifically, Defendants promotes their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Crazy Horse events.

305.    Defendants' unauthorized use of Pinder's image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Crazy Horse and their activities and attracting clientele to Crazy Horse.

306.    Defendants knew or should have known that their unauthorized use of Pinder's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

307.    Defendants' unauthorized use of Pinder's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

308.    Defendants' wrongful conduct as described herein was willful.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

309.   As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

310.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

311.   The method and manner in which Defendants used the image of Pinder further evinces that Defendants was aware of or consciously disregarded the fact that Pinder did not consent to Defendants' use of the image to advertise Defendants' businesses.

312.   Defendants had caused irreparable harm to Pinder, her reputation, and brand by attributing to Pinder the strip club lifestyle and activities at Crazy Horse.

313.   Defendants' unauthorized use of Pinder's image, likeness, and/or identity directly and proximately caused and continue to cause damage to Pinder in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PINDER COUNT II
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)

314.   Pinder re-alleges paragraphs 1 – 21, 25, 27 – 52, and 86 – 96 above, and incorporates the same by reference as though fully set forth herein.

315.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Pinder from the conduct described herein

/ / /

316.    Defendants used Pinder's image in order to create the false impression with the public that Pinder either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Crazy Horse, and thereby generate revenue for Defendants.

317.    Thus, this was done in furtherance of Defendants' commercial benefit.

318.    Pinder is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Pinder's images in magazines and online. By virtue of Pinder's use of her image and identity to build her brand, she has acquired a distinctiveness through secondary meaning. Pinder's image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

319.    Both Pinder and Defendants compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

320.    As such, an unauthorized use of Pinder's image to promote a strip club created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Pinder. There is no doubt that Defendants' used Pinder's image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Pinder's image and likeness was an existing intent to commercialize an interest in Pinder's image and likeness.

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

321.    Defendants' use of Pinder's image, likeness, and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association, which has deceived Pinder's fans, and present and prospective clients, into believing that Crazy Horse advertisements are endorsed by Pinder, or sponsored, approved or associated with Pinder.

322.    Despite the fact that Defendants was at all times aware that Pinder neither worked at, nor endorsed their strip club, nevertheless, they used Pinder's image in order to mislead potential customers as to Pinder's employment at and/or affiliation with Crazy Horse.

323.    Defendants knew that their use of Pinder's image would cause consumer confusion as to Pinder's sponsorship and/or employment at Crazy Horse.

324.    Upon information and belief, Defendants' use of Pinder's image did in fact cause consumer confusion as to Pinder's employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

325.    As a direct and proximate result of Defendants' actions, Pinder has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Pinder's image, likeness, and/or identity, or how Pinder's image, likeness, and/or identity is being depicted by Defendants.

326.    Further, any failure, neglect or default by Defendants will reflect adversely on Pinder as the believed source of origin, sponsorship, approval, or association thereof, hampering efforts by Pinder to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pinder.

327.    Due to Defendants' unauthorized use of Pinder's image, Pinder has been damaged in an amount to be determined at trial.

/ / /

KB/86

**WHEREFORE**, Pinder respectfully requests that the Court enter a judgment against Defendants' and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## PINDER COUNT III
### (Violation of Nevada's Right of Publicity Statute – NRS 597.810)

328.    Pinder re-alleges paragraphs 1 – 21, 25, 27 – 52, and 86 – 96 above, and incorporates the same by reference as though fully set forth herein.

329.    Pinder has a right of publicity under Nevada's Right of Publicity statute—NRS 597.810.

330.    Defendants may not use the name, voice, signature, photograph or likeness of Pinder for any commercial use without first having obtained her written consent for that use.

331.    As set forth herein, Defendants have violated Pinder's right to publicity by invading Pinder's privacy, misappropriating her likeness, and publishing on Defendants' social media outlets and/or website, the altered image, likeness, and/or identity of Pinder, as it appears in **Exhibit D**, which made it appear as though Pinder was employed at Crazy Horse, or endorsed Defendants' strip club, or any Crazy Horse events or activities.

332.    Defendants' unauthorized use of Pinder's image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

333.    Pinder is informed and believes and herein alleges that Defendants posted and publicized her image and likeness in a manner that was hidden, inherently undiscoverable, or

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

inherently unknowable, in that Defendants published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

334.    Pinder is further informed and believes and herein alleges that discovery will prove that Defendants' republicized Pinder's image and likeness on various occasions, via different mediums, after the initial date of the posting of her image and likeness (March 20, 2015) and through the filing of this complaint.

335.    Pinder is informed and believes and herein alleges that Defendants' republication of Pinder's image and likeness was altered so as to reach a new audience and/or promote a different product.

336.    Despite the clear language of NRS 597.810, and at all relevant times, Defendants published, printed, displayed, and/or publicly used Pinder's image, likeness, and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Crazy Horse and/or Crazy Horse events and activities.

337.    The respective social media outlets were designed to attract business and generate revenue for Crazy Horse.

338.    Upon information and belief, Defendants' use of Pinder's image, likeness and/or identity did in fact attract clientele and generate business for Crazy Horse.

339.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Pinder's image, likeness, and/or identity on Crazy Horse social media outlets or for any other use or matter associated with Crazy Horse.

340.    Defendants took these actions without Pinder's permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use

Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activities or for any other use.

341.    Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activity.

342.     Defendants was at all relevant times aware that they never received Pinder's permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Crazy Horse.

343.    At no point did Defendants ever compensate Pinder for their use of her image, likeness, and/or identity.

344.    No applicable privilege or authorization exists for Defendants' use of Pinder's Image.

345.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pinder's image, likeness, and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

346.    Defendants caused irreparable harm to Pinder, her reputation, and brand by attributing to Pinder the strip club lifestyle and activities at Crazy Horse.

347.    Defendants have also damaged Pinder as a direct and proximate result of their unauthorized use of Pinder's image, likeness, and/or identity without compensating Pinder.

348.    Due to Defendants' violation of Pinder's rights of privacy and publicity under NRS 597.810, Pinder has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

KB/86

349.    In addition, Pinder hereby requests an Order permanently enjoining Defendants from violating Pinder's right to privacy and publicity.

350.    In addition, Pinder hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## PINDER COUNT IV
### (Negligence and *Respondeat Superior*)

351.    Pinder re-alleges paragraphs 1 – 21, 25, 27 – 52, and 86 – 96 above, and incorporates the same by reference as though fully set forth herein.

352.    Pinder is further informed and believes and herein alleges that Defendants maintain or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

353.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

354.    Defendants owed a duty of care to Pinder to ensure that their advertising and promotional materials and practices did not infringe on her property and publicity rights.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

355.    Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

356.    Defendants breached their duty of care to both Pinder and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

357.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with federal and Nevada law, were not violated.  Defendants breached their duty of care to Pinder and consumers by their negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

358.    Defendants' breach was the proximate cause of the harm Pinder suffered when her Image was published without her consent, authorization and done so in a false, misleading, and/or deceptive manner.

359.    As a result of Defendants' negligence, Pinder has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

***Plaintiff Mariana Davalos' Causes of Action against***
***Defendants RUSSELL ROAD FOOD AND BEVERAGE, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; RUSSO FOODS, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB; and SN INVESTMENT PROPERTIES, LLC d/b/a CRAZY HORSE III GENTLEMEN'S CLUB***

## DAVALOS COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)

360.    Davalos re-alleges paragraphs 1 – 21, 26, 27 – 52, and 97 – 107 above, and incorporates the same by reference as though fully set forth herein.

KB/86

361.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Davalos from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

362.    Defendants used Davalos' image, likeness and/or identity as described herein without authority in order to create the perception that Davalos worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendants to use her image in order to advertise, promote, and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities.

363.    Defendants' use of Davalos' image, likeness and/or identity to advertise, promote and market Defendants' businesses, Crazy Horse, and/or Crazy Horse events and activities as described in this Complaint was false and misleading.

364.    Defendants' unauthorized use of Davalos' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Davalos worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities and/or that Davalos would participate in or appear at the specific events promoted in the advertisements.

365.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Crazy Horse, as to the general quality of attendees and participants of Crazy Horse and in their events, as well as specifically whether Davalos worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants'

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

businesses, Crazy Horse, or Crazy Horse events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities.

366.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Davalos worked at or was otherwise affiliated with Crazy Horse, endorsed Defendants' businesses, Crazy Horse, or Crazy Horse events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Crazy Horse events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Crazy Horse, visit Crazy Horse, and participate in events at Crazy Horse and had a material effect and impact on the decision of members and prospective members and participants to join Crazy Horse, visit Crazy Horse, and take part in the events at Crazy Horse.

367.   Defendants' advertisements, promotions and marketing of Crazy Horse and events at Crazy Horse occur in and are targeted to interstate commerce. Specifically, Defendants promotes their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Crazy Horse events.

368.   Defendants' unauthorized use of Davalos' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Crazy Horse and their activities and attracting clientele to Crazy Horse.

369.   Defendants knew or should have known that their unauthorized use of Davalos' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

KB/86

370.    Defendants' unauthorized use of Davalos' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

371.    Defendants' wrongful conduct as described herein was willful.

372.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

373.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Davalos of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Koren.

374.    The method and manner in which Defendants used the image of Davalos further evinces that Defendants was aware of or consciously disregarded the fact that Davalos did not consent to Defendants' use of the image to advertise Defendants' businesses.

375.    Defendants had caused irreparable harm to Davalos, her reputation, and brand by attributing to Davalos the strip club lifestyle and activities at Crazy Horse.

376.    Defendants' unauthorized use of Davalos' image, likeness, and/or identity directly and proximately caused and continue to cause damage to Davalos in an amount to be determined at trial.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## DAVALOS COUNT II
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement**)

377.    Davalos re-alleges paragraphs 1 – 21, 26, 27 – 52, and 97 – 107 above, and incorporates the same by reference as though fully set forth herein.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

378.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Davalos from the conduct described herein

379.    Defendants used Davalos' image in order to create the false impression with the public that Davalos either worked at Defendants' strip club, or endorsed Defendants' businesses. This was done to promote and attract clientele to Crazy Horse, and thereby generate revenue for Defendants.

380.    Thus, this was done in furtherance of Defendants' commercial benefit.

381.    Davalos is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendants' customers are the exact demographic that views Davalos' images in magazines and online. By virtue of Davalos' use of her image and identity to build her brand, she has acquired a distinctiveness through secondary meaning. Davalos' image either suggests the basic nature of her product or service, identifies the characteristic of her product or service, or suggests the characteristics of her product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, her brand – the reason her clients seek to hire her – is unique in that it is encompassed in her identity, i.e., her persona.

382.    Both Davalos and Defendants compete in the entertainment industry, use similar marketing channels, and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

383.    As such, an unauthorized use of Davalos' image to promote a strip club created an undeniable confusion in Defendants' consumers' minds, which lead to competitive injury to Davalos. There is no doubt that Defendants' used Davalos' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of

///

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

Davalos' image and likeness was an existing intent to commercialize an interest in Davalos' image and likeness.

384.     Defendants' use of Davalos' image, likeness, and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association, which has deceived Davalos' fans, and present and prospective clients, into believing that Crazy Horse advertisements are endorsed by Davalos, or sponsored, approved or associated with Davalos.

385.     Despite the fact that Defendants was at all times aware that Davalos neither worked at, nor endorsed their strip club, nevertheless, they used Davalos' image in order to mislead potential customers as to Davalos' employment at and/or affiliation with Crazy Horse.

386.     Defendants knew that their use of Davalos' image would cause consumer confusion as to Davalos' sponsorship and/or employment at Crazy Horse.

387.     Upon information and belief, Defendants' use of Davalos' image did in fact cause consumer confusion as to Davalos' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

388.     As a direct and proximate result of Defendants' actions, Davalos has no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Davalos' image, likeness, and/or identity, or how Davalos' image, likeness, and/or identity is being depicted by Defendants.

389.     Further, any failure, neglect or default by Defendants will reflect adversely on Davalos as the believed source of origin, sponsorship, approval, or association thereof, hampering efforts by Davalos to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Davalos.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

390.   Due to Defendants' unauthorized use of Davalos' image, Davalos has been damaged in an amount to be determined at trial.

**WHEREFORE**, Davalos respectfully requests that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### DAVALOS COUNT III
**(Violation of Nevada's Right of Publicity Statute – NRS 597.810)**

391.   Davalos re-alleges paragraphs 1 – 21, 26, 27 – 52, and 97 – 107 above, and incorporates the same by reference as though fully set forth herein.

392.   Davalos has a right of publicity under Nevada's Right of Publicity statute—NRS 597.810.

393.   Defendants may not use the name, voice, signature, photograph or likeness of Davalos for any commercial use without first having obtained her written consent for that use.

394.   As set forth herein, Defendants have violated Davalos' right to publicity by invading Davalos' privacy, misappropriating her likeness, and publishing on Defendants' social media outlets and/or website, the altered image, likeness, and/or identity of Davalos, as it appears in **Exhibit E**, which made it appear as though Davalos was employed at Crazy Horse, or endorsed Defendants' strip club, or any Crazy Horse events or activities.

395.   Defendants' unauthorized use of Davalos' image and likeness was continuous and ongoing in that it was never removed after it was initially posted by Defendants; further, the manner in which Defendants used the subject image was ongoing and continuous in that any person visiting Defendants' Facebook account could view, access, and even download the image from the date it was first posted until present.

70                              KB/86

396.    Davalos is informed and believes and herein alleges that Defendants posted and publicized her image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published her image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

397.    Davalos is further informed and believes and herein alleges that discovery will prove that Defendants' republicized Davalos' image and likeness on various occasions, via different mediums, after the initial date of the posting of her image and likeness (November 2, 2015) and through the filing of this complaint.

398.    Davalos is informed and believes and herein alleges that Defendants' republication of Davalos' image and likeness was altered so as to reach a new audience and/or promote a different product.

399.    Despite the clear language of NRS 597.810, and at all relevant times, Defendants published, printed, displayed, and/or publicly used Davalos' image, likeness, and/or identity on their social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising, and marketing Crazy Horse and/or Crazy Horse events and activities.

400.    The respective social media outlets and website were designed to attract business and generate revenue for Crazy Horse.

401.    Upon information and belief, Defendants' use of Davalos' image, likeness and/or identity did in fact attract clientele and generate business for Crazy Horse.

402.    At all relevant times and at no point, did Defendants ever receive permission or consent, be it written or otherwise, to use Davalos' image, likeness, and/or identity on the Crazy Horse social media outlets or for any other use or matter associated with Crazy Horse.

KB/86

403.    Defendants took these actions without Davalos' permission, consent or authority, be it written or otherwise. In fact, Defendants never sought permission nor authority to use Davalos' image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activities or for any other use.

404.    Davalos never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use of her image, likeness and/or identity to advertise, promote, market or endorse Defendants' businesses, Crazy Horse or any Crazy Horse event or activity.

405.     Defendants was at all relevant times aware that they never received Davalos' permission or consent to use her Image on any website or social media account, or on any other medium, in order to promote Crazy Horse.

406.    At no point did Defendants ever compensate Davalos for their use of her image, likeness, and/or identity.

407.    No applicable privilege or authorization exists for Defendants' use of Davalos' Image.

408.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Davalos' image, likeness, and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

409.    Defendants caused irreparable harm to Davalos, her reputation, and brand by attributing to Davalos the strip club lifestyle and activities at Crazy Horse.

410.    Defendants have also damaged Davalos as a direct and proximate result of their unauthorized use of Davalos' image, likeness, and/or identity without compensating Davalos.

411.    Due to Defendants' violation of Davalos' rights of privacy and publicity under NRS 597.810, Davalos has been damaged in an amount to be determined at trial, but in all events

KB/86

not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

412.    In addition, Davalos hereby requests an Order permanently enjoining Defendants from violating Davalos' right to privacy and publicity.

413.    In addition, Davalos hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of her statutory rights to privacy and publicity.

**WHEREFORE**, Davalos respectfully requests that the Court issue a judgment against Defendants for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, including Defendants' profits and other relief deemed just and proper by this Court.

## DAVALOS COUNT IV
### (Negligence and *Respondeat Superior*)

414.    Davalos re-alleges paragraphs 1 – 21, 26, 27 – 52, and 97 – 107 above, and incorporates the same by reference as though fully set forth herein.

415.    Davalos is further informed and believes and herein alleges that Defendants maintain or *should have maintained* employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual use* of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

416.    Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

/ / /

KB/86

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

417.   Defendants owed a duty of care to Davalos to ensure that their advertising and promotional materials and practices did not infringe on her property and publicity rights.

418.   Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

419.   Defendants breached their duty of care to both Davalos and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

420.   Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with federal and Nevada law, were not violated.  Defendants breached their duty of care to Davalos and consumers by their negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

421.   Defendants' breach was the proximate cause of the harm Davalos suffered when her Image was published without her consent, authorization and done so in a false, misleading, and/or deceptive manner.

422.   As a result of Defendants' negligence, Davalos has suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## **DEMAND FOR JURY TRIAL**

423.   Plaintiffs demand a trial by jury.

/ / /

/ / /

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.    For damages as provided in 15 U.S.C. § 1125(a);

2.    For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1117;

3.    For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

4.    For actual damages according to proof;

5.    For general damages according to proof;

6.    For special damages according to proof;

7.    For consequential damages according to proof;

8.    For reasonable attorneys' fees and costs as permitted by law;

9.    For prejudgment interest and royalties at the legal rate;

10.   For such other relief as this Court deems just and proper; and

11.   For punitive damages, in an amount to be determined at trial.

DATED this 24th day of June, 2019.

ALVERSON TAYLOR & SANDERS

/s/ Kurt R. Bonds
KURT R. BONDS, ESQ.
Nevada Bar No. 6228
DAVID M. SEXTON, ESQ.
Nevada Bar No. 14951
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000
efile@alversontaylor.com
*Attorneys for Plaintiffs*

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PARKWAY
SUITE 200
LAS VEGAS, NEVADA 89149
(702) 384-7000

KB/86